# UNITED STATES DISTRICT COURT.

THE UNITED STATES agt. JOHN HAYDEN, JOHN GRADY and ROBERT PARKER.*

To warrant a conviction of an inspector of election, chosen under a state law, for making a false certificate of the result of a canvass for representative in congress, it must appear that the certificate was made by such inspector fraudulently; and the fact that a fraud upon the ballot-box was committed by some unknown person, no agency of the inspector being shown, is not sufficient to warrant a conviction under section 5515 of the United States Revised Statutes.

It is not a criminal neglect of duty for an inspector of election to deliver the keys of a ballot-box, on the morning of election, to a policeman assigned by the city authorities to do duty at the poll on election day, where this is proven to have been the custom in the city in which the election was held, and where it is under the apparent sanction, though not strict construction, of the police law of the city.

The Revised Statutes of New York prescribe that the ballots, in certain specified boxes, shall be canvassed in a particular order; a failure by the inspectors to canvass in that order, in the absence of a guilty or improper motive, is not a criminal offense.

The court should always direct a verdict of not guilty where it is of opinion that the evidence will not authorize the jury to find a verdict of guilty, or if so found would set aside the verdict as contrary to evidence.

*Utica Term, March,* 1877.

WALLACE, *district judge, presiding.*

A bill of indictment was found against the defendants at the last January term of this court. It contained two counts. The first charged that the defendants, as inspectors of election of the western election district of the Eighth ward of the city of Albany, on the day of election, held on the 7th day of

* The requisites of an indictment under United States election law stated (*The U. S.* agt. *Cruikshank et. al.*, 92 *U. S. R.* [2 *Otto*], 542).

November, 1876, knowingly, wrongfully and unlawfully fraudulently made a false certificate of the result of the election in said election district in regard to representative in congress, whereby they allowed one Terence J. Quinn 945 votes and one Hamilton Harris fifty votes, when, in truth and in fact, said Harris received more than said fifty votes and said Quinn 'less than said 945 votes. The second charged, that while it was the duty of said defendants, as such inspectors, to make a true certificate of the result of such election, in said election district, in regard to said representative in congress, yet that said defendants neglected their duties, in not immediately, at the final close of the poll, taking possession of the ballot-box containing the votes cast for representative in congress, and immediately open and canvass the ballots therein contained; and that with intent to affect such election, in said election district, in regard to representative in congress, knowingly suffered and permitted the said ballot-box to go out of their possession, and knowingly suffered and permitted ballots in said box for representative in congress to be wrongfully taken from said ballot-box and destroyed and false and fraudulent ballots to be inserted in lieu thereof.

The defendants plead not guilty.

At this term of the court a jury was impanneled and the trial of the prisoners, under said indictment, took place. The material facts, proved by the prosecution, are as follows :

The prisoners, chosen under the laws of the state of New York, constituted the board of inspectors of election in and for the western election district of the Eighth ward of the city of Albany (a portion of the sixteenth congressional district of said state of New York), on the general election, held on the 7th day of November, 1876. The other officers of election were two poll clerks, appointed by the police commissioners of the city, two supervisors of election and two marshals, appointed pursuant to section 2012 of the United States Revised Statutes. The polling place was designated by the common council of said city. Before the polls were opened,

said police commissioners provided prisoners with six ballot-boxes, one each for electoral, state, congressional, judiciary, assembly and constitutional amendment ballots.   All the boxes were examined and locked, and in the presence of all the officers of election, without objection, the keys of all the said boxes were delivered by one of the prisoners, Hayden, to one Michael Nolan, one of the patrolmen assigned to perform police duty at that poll that day, under the direction of the police commissioners of the city, and were retained until returned by him in the evening to open the boxes, that the ballots in each might be canvassed.   It had been the custom in this and other election districts in said city, for at least six years prior, to make one of the patrolmen attending the poll the custodian of the ballot-boxes and their keys, except during the taking of the ballots and the time the ballots in a particular box were being canvassed.   Nine hundred and ninety-five ballots were cast in that district for representative in congress. At sun-set the polls were closed and the ballot-boxes were placed by the authority of the prisoners in the custody of the patrolmen, now three in number, and retained by them until the prisoners, as such inspectors, called for a particular box, when it was delivered to them.   Besides the officers of election and patrolmen, four citizens designated by the police commissioners of said city, were present to witness the canvass. The politics of the witnesses and officers of election were four democrats and five republicans.

The electoral ballots were first canvassed, with this result: Democrat, 678 votes; republican, 316 votes.

Next, the assembly ballots, as follows: Democrat, 593 vote ; republican, 392 votes.

It was shown that by the general desire of those present at the canvass, and as one of the candidates lived in the ward, the assembly ballots were canvassed out of the regular order.

Next, the congressional ballots, as follows: Democrat (T. J. Quinn), 945 votes; republican (H. Harris), fifty votes.

The other boxes were canvassed with substantially the same result as that of the electoral ticket.

It was shown that after the polls were closed that evening, and before the congressional ballots were canvassed, the room in which the canvass took place was, for a short time, somewhat dark; that all the boxes were placed in the back part of the room near an open window, at which, during the evening, the shadow of a man was, for an instant, seen by one of the witnesses of the canvass.

The prosecution called 100 voters, residents of the election district, who each testified * that, on the 7th day of November, 1876, they voted for Hamilton Harris for representative in congress. It was proposed to call 116 additional voters to testify to same effect, but the court thought it unnecessary to accumulate evidence upon that point.

It was also shown that one elector voted a peculiar silver backed greased congressional ballot, upon which was the name of Hamilton Harris, and this was not found in the congressional ballot-box during the canvass. Some of the ballots in this box looked clean and had the appearance of being little handled.

Each of the witnesses, who was present at the canvass, testified that the counting of the votes in all the ballot-boxes was fair and correct, and that they saw nothing done wrong, nor did they see the prisoners deviate from an honest course of action.

Upon the conclusion of the proof for the prosecution, a motion was made, by the prisoners' counsel, requesting the court to instruct the jury to acquit the prisoners, as it was not shown that either of the prisoners had committed a criminal offense.

*Henry Smith, Edward J. Meegan, J. Thomas Spriggs* and *E. Countryman,* for the prisoners.

*Messrs. Crowley* (U. S. attorney), *Pound* and *Murray* (assistant U. S. attorneys), for the prosecution.

---

* A voter may be required to disclose for whom he voted, although using a secret ballot (*The People* agt. *Thacher,* 55 *New York R.,* 525).

United States agt. Hayden et al.

WALLACE, *J.*, said, in substance: The indictment is found under section 5515 of the Revised Statutes of the United States, which reads as follows:

"Every officer of an election at which any representative or delegate in congress is voted for, whether such officer of election be appointed or created by or under any law or authority of the United States, or by or under any state, territorial district or municipal law or authority, who neglects or refuses to perform any duty, in regard to such election, required of him by any law of the United States, or of any state or territory thereof, or who violates any duty so imposed, or who knowingly does any acts thereby unauthorized with intent to affect any such election, or the result thereof, *or who fraudulently makes any false certificate of the result of such election* in regard to such representative or delegate, or who withholds, conceals or destroys any certificate of record so required by law respecting the election of any such representative or delegate, or who neglects or refuses to make and return such certificate as required by law, or who aids, counsels, procures or advises any voter, person or officer to do any act, by this or any of the preceding sections made a crime, or to omit to do any duty, the omission of which is, by this or any of such sections, made a crime, or attempts to do so, shall be punished as prescribed in section fifty-five hundred and ten."

The duties of inspectors of election, under the laws of the state of New York, so far as material to this case, are as follows:

"Section 26. Each box shall be provided with a sufficient lock, and shall be locked before the opening of the poll, and the key thereof delivered to one of the inspectors to be appointed by the board, and shall not be opened during the election, except in the manner and for the purposes hereinafter mentioned" (1 *R. S.* [*6th ed.*], 438).

"Section 37. Immediately after the final closing of the poll, at all general elections hereafter to be held in this state, in the several election districts, except in the city of New

York, the ballot-boxes used at such elections shall be opened and the votes therein canvassed in the manner now provided by law, but as nearly as may be in the following order:

" 1. The box containing the ballots indorsed ' electors.'

" 2. The box containing the ballots indorsed ' state.'

" 3. The box containing the ballots indorsed ' congress.'

" 4. The box containing the ballots indorsed ' senate.'

" 5. The box containing the ballots indorsed ' assembly.'

" 6. The box containing the ballots indorsed ' judiciary.'

" If any other ballot-boxes shall have been used at any such election, in pursuance of law, such other boxes shall be opened and the votes therein canvassed immediately after those hereinbefore specified, in such order as the inspectors of elections at the several polls shall respectively determine " (1 *R. S.* [*6th ed.*], 439).

The prisoners' counsel refer to the Albany police law (*chap. 77 of the laws* 1870 [*1st. vol., S. L.,* 1870], *p.* 208) upon this subject, as follows:

" Section 32. It shall be the duty of said board (police board) to detail, on the day of any election in said city of Albany, at least two patrolmen to each election poll, and to provide ballot-boxes for use at any and all such elections, and to provide for the custody of said boxes at all times, except during the taking, receiving and counting of the votes. Said city of Albany shall pay the expenses of procuring and taking care of its boxes."

" Section 33. It shall be the duty of said board to prevent any booth or box, for the distribution of tickets at any election, from being erected or maintained within one hundred and fifty feet of any polling place within said city, and to see that the arrangements for voting are such as to prevent any avoidable crowding of voters at such polls, and that the challengers of both and all parties have fair and equal room, rights and privileges for the discharge of · their duties at each poll, and that the canvassing of the votes be conducted in an orderly, fair, open and public manner, and no person or officer. shall

United States agt..Hayden et al.

have power to interfere with said board in their discharge of the duties imposed on them by this section."

To warrant a conviction, under the first count of the indictment, it must appear that the prisoners made a fraudulent certificate of the result of the election in the district in question. The proof in this case does not authorize any such conclusion. With reference to the charge contained in the second count of the indictment, it should appear, in order to justify a conviction, that the inspectors of election intended to perpetrate some wrongful act, or omission of duty, or were guilty of some palpable neglect that would lead to the conclusion that a violation of law was designed, and of course this could be inferred, in many instances, from their conduct. There is no doubt that a glaring fraud was perpetrated by some person or persons, but it was so slyly and shrewdly done that it cannot be traced, and while the prisoners may be the guilty persons, the testimony fails to show it. This canvass seems to have been conducted by the inspectors as carefully as canvasses usually are, and with as much regard for the requirements of the forms of the law. The inspectors, in delivering the keys of the ballot-boxes to one of the policemen attending the polls, acted pursuant to the custom prevailing in the district for many years, and this was at least approximately authorized by the police law of the city. There is no proof impeaching the character of the policemen, nor that any of them was an improper person to hold the keys. The canvassing of the assembly box was made by the general consent, or at least the acquiescence of all present, and its substitution in place of the " state " box facilitated the canvass of the congressional box.

I have made it a rule to direct a verdict of not guilty, where, in my opinion, the evidence will not authorize the jury to find a verdict of guilty, or if so found, I would set aside the verdict as contrary to evidence. I think this is a case of that class, and I therefore direct the jury to find a verdict of not guilty.