[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 29, 2004
THOMAS K. KAHN
CLERK

No. 02-16337

D. C. Docket No. 98-06118-CR-KLR

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

MAHENDRA PRATAP GUPTA,
ALLEGHENY MANAGEMENT COMPANY, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

**(March 29, 2004)**

Before HULL, MARCUS and STAHL[*], Circuit Judges.

_____

[*]Honorable Norman H. Stahl, United States Circuit Judge for the First Circuit, sitting by designation.

MARCUS, Circuit Judge:

In this complex Medicare fraud case, the United States appeals from the district court's order granting a judgment of acquittal or, alternatively, a new trial, after a jury had convicted Appellees on three counts of mail fraud and fraud against the government. The government argues that the district court lacked subject matter jurisdiction to issue the order because the motions were filed outside the time limits for post-verdict motions prescribed in Rules 29 and 33 of the Federal Rules of Criminal Procedure, and that the district court's order was wrong on the merits as well. Because the district court plainly lacked jurisdiction to entertain these post-verdict motions, we **VACATE** its order and **REMAND** for further proceedings consistent with this opinion.

## I

The relevant facts and procedural history of this case are straightforward. This case began in September of 1997 when a federal grand jury in the District of Montana returned a sixteen-count indictment against defendants Mahendra Pratap Gupta, three other natural persons, Allegheny Management Company ("Allegheny"), and ten other companies involved in providing home healthcare services and supplies. In essence, the indictment charged the named defendants

2

with having created a scheme to defraud Medicare based upon violations of the

"related party" regulation[1] by use of false claims, straw owners, and other

---

[1] The "related party" regulation governs disbursement of Medicare funds from the federal government when an eligible health care provider has purchased goods and services from an entity with which it has a relationship of ownership or control. So-called "related-party contracts" are treated as if the health provider were dealing with itself. Medicare therefore reimburses the home health care agency at the cost to the related provider. To enforce this principle, home health agencies are required to divulge contracts with related entities in two separate parts of their annual cost reports to Medicare, the Form 339 Questionnaire and Section A-6.

The pertinent Medicare regulation states:

> § 413.17 Cost to related organizations.
>
> (a) Principle. . . . [C]osts applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable <u>in the allowable cost of the provider at the cost to the related organization</u>. . . .
>
> (b) Definitions --
> (1) Related to the provider. Related to the provider means that the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organization furnishing the services, facilities, or supplies.
>
> (2) Common ownership. Common ownership exists if an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.
>
> (3) Control. Control exists if an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

42 C.F.R. § 413.17 (emphasis added).

deceptive actions to conceal the close relationship between the various persons.[2]

On July 20, 1998, the case was transferred to the Southern District of Florida pursuant to Rule 21 of the Federal Rules of Criminal Procedure. The district court then ordered the trial of four defendants[3] severed from the trial of Mahendra Pratap Gupta and six companies. After the district court had dismissed thirteen counts of the indictment, the case proceeded to trial on October 25, 1999, against the remaining defendants -- Mahendra Pratap Gupta, Edward J. Quinlan, and Kuldeep K. Hajela, and the remaining six companies, Allegheny, Cardinal, Marshall, Atlantic, West Coast, and Treasure Coast -- on the three remaining counts: conspiracy to defraud Medicare, 18 U.S.C. § 286, and two counts of mail fraud, 18 U.S.C. §§ 1341, 1342.

At the close of the government's case, the district court granted defendant Hajela's motion for a judgment of acquittal and reserved ruling pursuant to Rule

---

[2] The original defendants were Mahendra Pratap Gupta, Edward J. Quinlan, Kuldeep K. Hajela, Vijay Kumar Gupta, the Allegheny Management Company ("Allegheny"), Cardinal Care, Inc. ("Cardinal"), Marshall Medical Services, Inc. ("Marshall"), Atlantic Health Care Services, Inc. ("Atlantic"), West Coast Health Care Services, Inc. ("West Coast"), Treasure Coast Health Care Services, Inc. ("Treasure Coast"), American Home Health Services, Inc. ("American Home"), Franklin Health Care Services, Inc. ("Franklin"), and Greenfield Health Care Services, Inc. ("Greenfield"). The district court dismissed two additional defendant companies, Independent Home Health Care, Inc. and Capital City Health Care Services, Inc., on motion of the government.

[3] The government subsequently dismissed the charges against these four defendants, Vijay Kumar Gupta and his three companies, American Home, Franklin, and Greenfield.

29(b) of the Federal Rules of Criminal Procedure[4] on the motions of the remaining eight defendants. On November 5, 1999, the jury acquitted defendant Quinlan, but convicted Mahendra Gupta and the six companies, finding them guilty as charged.

The same day, on November 5, 1999, the district court granted the defendants' request for an extension of "at least three weeks" to file post-verdict motions. The entire exchange went as follows:

> MR. SONNETT: Your honor, may I ask for an extension of time to file post trial motions.
>
> THE COURT: Certainly, how much time do you need.
>
> MR. SONNETT: Given my calendar, I'd like to ask for at least three weeks.
>
> THE COURT: That's fine.

On November 29, 1999, Allegheny filed its <u>only</u> post-trial motion for judgment of acquittal, and on December 3, 1999, Gupta and the other five

---

[4] Rule 29, "Motion for Judgment of Acquittal," provides: (a) "Before Submission to the Jury[,]" either at the close of the government's case or at the close of all the evidence, a defendant may file a motion for judgment of acquittal on any count for which the evidence is insufficient to sustain a conviction.

Rule 29(b), "Reserving Decision[,]" in turn provides in pertinent part:

> The Court may reserve decision on the motion, proceed with the trial . . . , submit the case to the jury, and decide the motion [either before or after it returns a guilty verdict] . . . . If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

Fed. R. Crim. P. 29.

defendant companies filed motions for a judgment of acquittal, or alternatively, for a new trial.  On January 27, 2000, the district court denied all of the pending post-trial motions on the merits.

Sentencing was continued several times after that.  A year later, on January 25, 2001, Gupta and five of the defendant companies[5] moved the court to reconsider its earlier denial of judgments of acquittal or, alternatively for a new trial, based on information not previously available.  On October 1, 2001, Gupta and five of the six companies filed additional materials with respect to what they termed their renewed motions for judgment of acquittal or a new trial.

Finally, on October 16, 2002 -- almost three years after the original motions for a judgment of acquittal and a new trial had been filed, and some thirty-three months after denying these motions -- the district court granted the Rule 29 and 33 motions, even for defendant Allegheny, which had never filed further motions after the district court's January 27, 2000 denial of its November 29, 1999 post-trial motion for judgment of acquittal.

The government appealed, arguing first that the district court had no jurisdiction to entertain the motions for a judgment of acquittal or for a new trial because of the time limits contained in Rules 29 and 33, and that, in any event, the

_____

[5] Notably, Allegheny did not join in the motion.

court erroneously granted the motions on the merits. We do not reach the merits since we agree that the court was without jurisdiction to grant the motion to reconsider its denial of the earlier motions for judgment of acquittal or new trial.

## II

The government makes a threefold argument that the district court lacked jurisdiction to entertain the Rule 29 and 33 motions it eventually granted. First, it claims, the time extension granted to the defendants was for an uncertain period, thus violating the requirement that extensions be granted only for a time certain. Second, it says that even if the court properly granted the defendants extra time to prepare the motions, they did not file their motions for judgment of acquittal and new trial within that extended time period. Finally, the government urges that even if the original motions were timely filed, considered, and denied, Gupta's motion to reconsider and renewed motion were made far outside any possible allowable time period. Because we are persuaded by the last of these arguments, we conclude that the district court indeed lacked jurisdiction to entertain the renewed motions and, therefore, vacate the order granting the untimely verdicts, reinstate the jury's verdicts, and remand for sentencing.

We review <u>de novo</u> the district court's interpretation and application of

statutory provisions that go to whether the court has subject matter jurisdiction. Chaney v. Tenn. Valley Auth., 264 F.3d 1325, 1326 (11th Cir. 2001) (per curiam). Factual findings made by the district court with respect to jurisdiction, however, are reviewed only for clear error. United States v. McPhee, 336 F.3d 1269, 1271 (11th Cir. 2003).

Rule 29(c) of the Federal Rules of Criminal Procedure contains strict time limits for the filing of post-verdict motions, either for a judgment of acquittal, or renewing a motion for acquittal on which the district court had reserved ruling under Rule 29(b). Such motions must be filed within seven days after a guilty verdict, or within whatever additional time the court may allow, provided the extension is granted within that same seven-day time frame after the verdict.[6]

---

[6] Rule 29 reads, in pertinent part:

Rule 29. Motion for a Judgment of Acquittal

. . . .

(c) After Jury Verdict or Discharge.

(1) Time for a Motion. A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later, or within any other time the court sets during the 7-day period.

Fed. R. Crim. P. 29.

8

Further, Rule 33 provides two ways in which a new trial can be granted post-trial.[7]

In its order, the district court said that the defendants had requested and the court had granted an extension of time to file post-trial motions, finding that the "initial motions were timely filed within the period set by the court." This ruling by the trial court effectively resolved the question of fact as to how much time the court had granted to the defendants to file post-trial motions. All parties agree that this particular ruling is reviewed only for clear error. See McPhee, 336 F.3d at 1271. The record supports this finding. On November 5, 1999, the defendants

---

[7] Rule 33 reads, in pertinent part:

Rule 33. New Trial

. . . .

(b) Time to File.

(1) Newly Discovered Evidence. Any motion for a new trial grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty. If an appeal is pending, the court may not grant a motion for a new trial until the appellate court remands the case.

(2) Other Grounds. Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7- day period.

Fed. R. Crim. P. 33.

requested and the district court granted an extension of three weeks.[8]  Since Rule

29(c)(1) allowed the defendants seven days to file post-trial motions, the request

for an extension of three weeks can fairly be interpreted as a request for a total of

28 days up to and including December 3, 1999, which the court granted on the day

of the verdict.[9]  Thus the district court's finding that the motions filed on

November 29, 1999 and December 3, 1999 were timely is not clearly erroneous.[10]

### III

Even though we conclude that the motions of November 29 and December

3, 1999 were timely filed, these motions were denied on the merits on January 28,

---

[8] While the government correctly observes that the defendants requested an extension of "at least three weeks," we interpret the district court's ruling to have granted a period of three weeks. Although it is not clear exactly how long "at least three weeks" is, it certainly should not be interpreted as conferring a period of less than three weeks. We have deemed it useful to split up the phrase "at least three weeks" into its definite and indefinite parts: "at least" is uncertain, but "three weeks" is not. Plainly, the district court meant to give the defendants no less than "three weeks."

[9] The government argues that the exchange between defense counsel and the district court actually only resulted in the grant of a total of three weeks, including the seven day period. We are satisfied, however, that the exchange can be fairly interpreted as a grant of a three week extension beyond the initial seven-day period.

[10] The defendants also contend that, since the seven-day period provided by Rule 29 is less than 11 days under Rule 45(a)(2), the initial due date under the Rule was extended five days by excluding the two intervening weekends and the Veterans' Day holiday, and thus that the three-week extension was granted until December 8. We need not decide this question since the initial motions were filed on November 29 and December 3, 1999, within 28 days after the verdict's return on November 5, 1999.

10

2000. At that time nothing remained to be done, except the sentencing of the convicted defendants. Yet Gupta and five of the convicted companies (excluding Allegheny) filed a motion a year later, on January 25, 2001, asking the district court to reconsider its denial on January 27, 2000 of the Rule 29 motions. Then, on October 1, 2001, Gupta and the five companies filed a Motion of Submission and Supplemental Memorandum concerning their renewed motion for a judgment of acquittal, or in the alternative, for a new trial. After still another year had passed, on October 16, 2002, the district court entered its orders granting judgments of acquittal and, alternatively, granting a new trial.

On this appeal, the defendant must show that the motion to reconsider and renewed motion were timely and proper. We hold that they were not. See Carlisle v. United States, 517 U.S. 416, 422, 426, 116 S. Ct. 1460, 1464, 1466, 134 L. Ed. 2d 613 (1996) (citing and quoting United States v. Smith, 331 U.S. 469, 473, 67 S. Ct. 1330, 1332, 91 L. Ed. 1610 (1947)); United States v. Bramlett, 116 F.3d 1403, 1406 (11th Cir. 1997) (citing and quoting United States v. Hall, 854 F.2d 1269, 1271-72 (11th Cir. 1988)); Fed. R. Crim. P. 29(c), 33(b)(2), 45.

The district court's power to act is sharply constrained by the relevant rules of criminal procedure. Indeed, time limits for post-verdict motions are older than the Federal Rules themselves, which were enacted in 1944. See Smith, 331 U.S. at

473, 67 S. Ct. at 1332 ("Generally speaking, the power of a court over its judgments at common law expired with the term of Court . . . There was, however, a three-day limitation on the right to move for a new trial." (internal citations omitted)). The original Rule 2 -- which has been amended only once in 2002, for purely stylistic reasons -- states that the criminal rules "shall be construed to secure . . . the elimination of unjustifiable expense and delay." Fed. R. Crim. P. 2 (1944). To permit the unlimited renewal or reconsideration of fully decided motions would needlessly tie up judicial resources and seriously delay the final disposition of cases. Doing so would undermine both the language and purpose of the Rules. As the Supreme Court explained in Smith:

> The trial judge is given power by the Rules to entertain motions for new trial within five [now seven] days after verdict and may extend that time for so long as he thinks necessary for proper consideration of the course of the trial. But extension of that time indefinitely is no insurance of justice. On the contrary, as time passes, the peculiar ability which the trial judge has to pass on the fairness of the trial is dissipated as the incidents and nuances of the trial leave his mind to give way to immediate business. It is in the interest of justice that a decision on the propriety of a trial be reached as soon after it has ended as is possible, and that decision be not deferred until the trial's story has taken on the uncertainty and dimness of things long past.

331 U.S. at 475-76, 67 S. Ct. at 1334.

This case is a perfect example of the kinds of problems that may result when the time limits prescribed by the Rules are ignored. Had sentencing gone forward

12

after denial of the initial motions on January 27, 2000, an appeal on the merits could have been heard and decided two years ago. Instead, sentencing and any subsequent appeals must now proceed some four years later.

In Carlisle, the Supreme Court definitively ruled that a motion for a judgment of acquittal filed one day after the seven-day limit was untimely and, therefore, vacated the order granting an acquittal to Carlisle. 517 U.S. at 433, 116 S. Ct. at 1470. The Court held that a literal reading of the texts of Rule 29(c) and Rule 45(b) of the Federal Rules of Criminal Procedure must be adhered to.[11] The Court observed that "[w]hether the action of the District Court here is described as the granting of an untimely motion, or the sua sponte entry of a judgment of acquittal, it contradicted the plain language of Rule 29(c), and effectively annulled the 7-day filing limit" and was therefore improper. Id. at 426, 116 S. Ct. at 1466. This holding put the treatment of Rule 29's time limits in line with the Court's Rule 33 decision in Smith, 331 U.S. at 469, 67 S. Ct. at 1330. The Court cited Smith, observing:

> "It would be a strange rule . . . which deprived a judge of power to do what was asked when request was made by the person most concerned, and yet allowed him to act without petition," and such an arrangement "would almost certainly subject trial judges to private

---

[11] Rule 45(b)(2) expressly provides that the district court may not extend the time to take any action under Rules 29, 33, 34, and 35, except as stated in those rules.

appeals or application by counsel or friends of one convicted." The same is true here.

Carlisle, 517 U.S. at 422, 116 S. Ct. at 1464 (quoting Smith, 331 U.S. at 474, 475, 67 S. Ct. at 1333). This language undercuts the defendants' contention that sua sponte consideration of judgments of acquittal should somehow be treated differently from those initiated by one of the parties to the suit, especially in light of the restrictions embodied in Fed. R. Crim. P. 45.

Simply put,

> These Rules are plain and unambiguous. If, as in this case, a guilty verdict is returned, a motion for judgment of acquittal must be filed, either within seven days of the jury's discharge, or within an extended period fixed by the court during that 7-day period. There is simply no room in the text of Rules 29 and 45(b) for the granting of an untimely postverdict motion for judgment of acquittal . . . .

Id. at 421, 116 S. Ct. at 1464.

Following Carlisle, we faced a situation quite similar to the facts of this case. In United States v. Bramlett, 116 F.3d 1403, 1405 (11th Cir. 1997), the defendant moved for a new trial three days after being convicted of arson. The district court denied this motion. Id. Two months after the denial, Bramlett filed for "reconsideration" of this ruling. Id. The district court granted the motion, characterizing it as a "renewed" motion. Id. On appeal, we held that a renewed

14

motion for a new trial, when made outside of the post-verdict seven-day period and outside of any extension granted during that period, was barred. Id. at 1406. We observed that "[t]he question thus becomes whether the district court had the power to construe Appellee Bramlett's March 25, 1996 filing as a 'renewed' motion for a new trial that somehow related back to his timely filing. The Federal Rules of Criminal Procedure and case law interpreting those rules establish that district courts do not possess any such power." Id. at 1405-06 (footnote omitted). We went on to say:

> Inasmuch as the district court in the present case construed Bramlett's memorandum as a renewal of the first, timely motion for a new trial, it impermissibly granted an extension outside the seven-day period prescribed by Rule 33. A district court may not disregard the jurisdictional limitations imposed by the Federal Rules of Criminal Procedure in this manner.

Id. at 1406.

The clear holding of Bramlett, then, is that post-verdict renewed motions filed outside the seven-day period and any extension granted during that period are untimely. Because the motion to reconsider in the case before us was filed one year after the denial of the original timely motions, the district court lacked

jurisdiction to consider it.[12]  In <u>United States v. Hall</u>, 854 F.2d 1269 (11th Cir.

1988), we had earlier held that:

> Rule 33 clearly states that a court may only grant an extension of the
> seven-day period during those first seven days.  Rule 45 of the
> Federal Rules of Criminal Procedure, which describes a trial court's
> authority to enlarge the time periods set forth in Rule 33, stresses that
> "the court may not extend the time for taking any action under [Rule
> 33] except to the extent and under the conditions stated in [the rule]."
> Following these clear instructions, our court has ruled that, after the
> expiration of the seven-day period prescribed in Rule 33, a district
> court no longer has jurisdiction to "enter an order purporting to
> enlarge the time within which" a defendant can file such a motion.
> The trial court in this case could not ignore these time limitations.

<u>Id.</u> at 1271-72 (internal citations omitted).  <u>Hall</u> did not involve a renewed motion

or a motion to reconsider, but rather an attempt to file a Rule 33 motion after the

seven-day period on the ground of newly discovered evidence.  It nonetheless also

made clear our concern with attempts to circumvent the time limits clearly

prescribed in the Rule.[13]

---

[12] Appellees and the district court attempt to distinguish <u>Bramlett</u> as involving a renewed motion that raised "new issues," although nothing in that opinion suggests that the renewed motion did raise new issues.  Even if it did, the court's holding does not in any way hinge on that fact -- all that mattered was whether the motion was a renewed one.  <u>See also</u> <u>United States v. Hill</u>, 177 F.3d 1251, 1252-53 (11th Cir. 1999) (per curiam); <u>United States v. Renick</u>, 273 F.3d 1009, 1019 (11th Cir. 2001).

[13] The defense cites two post-<u>Carlisle</u> district court cases in the Eleventh Circuit that supposedly allowed reconsideration of timely motions.  These cases are neither controlling, nor on point.  The first, <u>Groover v. Michelin N. Amer., Inc.</u>, 90 F. Supp. 2d 1236 (M.D. Ala. 2000), was not a criminal case and did not involve Rule 29 or 33, but rather concerned the adjudication of a motion for summary judgment.  The other case, <u>United States v. Ferguson</u>, 142 F. Supp. 2d

16

All the parties and the district court in this case agree that the issuance of the judgments of acquittal was not based upon newly discovered evidence, and did not rely on the three-year period permitted by Rule 33(b)(1). The fact that the trial court relied upon our decision in <u>United States v. Whiteside</u>, 285 F.3d 1345 (11th Cir. 2002), to explain the merits decision to grant judgments of acquittal does not relieve the court of the obligation to adhere to the Rules' unambiguous time limits. Questions concerning the application of <u>Whiteside</u> to the facts of this case can be addressed on merits appeal following the imposition of sentences.

In sum, our case law makes it abundantly clear that motions to reconsider or renew Rule 29 or 33 motions are not permissible if they are filed outside the seven-day post-verdict period or outside an extension granted during that seven-day period. Here the defendants' renewed motions were made many months outside the allotted seven-day period and the extension granted by the district court. Any judgment made so long after the end of the trial, and long after the time prescribed by the Rules, was likely subject to the "uncertainty and dimness of things long past" that <u>Smith</u> warned against. The time periods prescribed by the Rules and unambiguous case precedent forbid us from allowing the entry of

---

1350 (S.D. Fla. 2000), addressed a Sixth Amendment-based motion to dismiss and timeliness was not an issue.

judgment of acquittal or the order for a new trial to stand. Accordingly, we vacate its judgment, reinstate the jury's verdicts, and remand for sentencing.

**IV**

Finally, the government urges that, upon remand, this case should be reassigned to a different judge from the one who presided over the trial and granted the Rule 29 and 33 motions. In deciding whether it is necessary to reassign the case to another judge on remand, we consider "(1) whether the original judge would have difficulty putting his previous views and findings aside; (2) whether reassignment is appropriate to preserve the appearance of justice; (3) whether reassignment would entail waste and duplication out of proportion to gains realized from reassignment." United States v. Torkington, 874 F.2d 1441, 1447 (11th Cir. 1989) (citation omitted). We see no indication that the experienced district judge who tried this case would have any problem following the mandate of this Court, or that the appearance of justice would be disserved by allowing him to continue to preside over this case. Surely, a judge grossly biased against the government would not have denied the initial Rule 29 and 33 motions.

The government says, nevertheless, that if the case is remanded, the result -- a supposedly too-light sentence -- would be "preordained." We disagree. First, it

18

seems strange to claim that the trial judge is likely to rule in an ominously predictable manner when he has already demonstrated his willingness to reconsider his previous rulings. Second, even if the judge were to impose the same sentence he suggested he would give in the previous sentencing hearing, there is no reason to doubt his judgment or impartiality. Consistency in the pursuit of justice is no vice. Moreover, an appeal of any sentence imposed is a possibility under 18 U.S.C. § 3742, should the government or the defendants have grounds. Finally, reassignment to a new judge would require significant and unnecessary use of judicial resources.

**VACATED AND REMANDED.**