**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2532
_____

In re: Louis N. Delloso,
Debtor

Strategic Funding Source, Inc. d/b/a Kapitus,
Appellant

_____

On Appeal from the United States Bankruptcy Court for the
District of Delaware
(D.C. No.:  16-10832)
Bankruptcy Judge: Hon. Craig T. Goldblatt

_____

Argued on April 25, 2023
_____

Before: KRAUSE, BIBAS and RENDELL, *Circuit Judges.*

(Filed: July 10, 2023)

Matthew Beebe
Meluney Alleman & Spence
1143 Savannah Road

Suite 3-A
Lewes, DE 19958

James M. Sullivan   [ARGUED]
Windels Marx Lane & Mittendorf
156 W. 56th St.
New York, NY 10019
        Counsel for Appellant

Kasey H. DeSantis   [ARGUED]
Neal J. Levitsky
Fox Rothschild
919 N. Market Street
Suite 300
Wilmington, DE 19801
        Counsel for Appellee

————————————

OPINION OF THE COURT

————————————

RENDELL, *Circuit Judge*.

Appellant Strategic Funding Source, Inc. d/b/a Kapitus appeals the Bankruptcy Court's denial of Kapitus's motion to reopen the chapter 7 bankruptcy case of Louis N. Delloso more than five years after the Bankruptcy Court closed the case. Kapitus, one of Delloso's creditors, sought to reopen his bankruptcy case to challenge the dischargeability of Delloso's debt, as Kapitus believes that, before petitioning for bankruptcy, Delloso fraudulently transferred assets that should

have been part of the bankruptcy estate to a company that he owns and operates today.

The Bankruptcy Court declined to reopen the proceedings for two reasons. First, it was clear that any complaint to assert that the debt was dischargeable or to revoke the dischargeability of the debt would be untimely under applicable bankruptcy rules, and the time could not be extended by equitable tolling. Second, assuming Kapitus's allegations were true, it could obtain appropriate and sufficient alternative relief by suing Delloso and his new company in state court, which Kapitus had already done in New York. We agree with the rigorous and well-reasoned opinion of the Bankruptcy Court, discern no error in its analysis, and find no abuse of discretion in its decision to deny the motion to reopen. We will affirm.

I.[1]

In 2011, Kapitus agreed to purchase certain receivables from Greenville Concrete, a company owned, in part, by Delloso, for $909,775. Under this agreement, Greenville Concrete would deposit its receivables into a designated account for Kapitus's benefit. The parties continued under this

---

[1] Many of the facts set forth in this section are drawn from Kapitus's underlying motion to reopen, which we assume to be true, as the Bankruptcy Court did, for purposes of resolving this case. See A3 n.3 (explaining that "the Court will resolve the motion to reopen under the motion to dismiss standard applicable under Fed. R. Bankr. P. 8. The Court accordingly accepts as true . . . the factual allegations set forth in [the] motion.").

3

agreement without incident until March 6, 2013, when Greenville Concrete failed to deposit certain receivables into the account. Kapitus responded by issuing a notice of default.

Unable to resolve the dispute without court intervention, Kapitus sued Greenville Concrete in New York state court for breach of contract. Later, the two entities reached a settlement whereby Greenville Concrete agreed to make weekly payments until reaching a set amount and, if Greenville Concrete were to default on this new agreement, Kapitus would be permitted to enter a judgment against Greenville Concrete and Delloso. Greenville Concrete defaulted and Kapitus obtained a state court judgment against Delloso and Greenville for $776,600.25.

On March 31, 2016, Delloso filed a chapter 7 voluntary bankruptcy petition in which he listed, among other debts, the $776,600.25 he owed to Kapitus. He also disclosed that his sole employer for the preceding three years was "Bari Concrete Construction." A85. As 11 U.S.C. § 341 required, the Bankruptcy Court scheduled the creditors' meeting for May 4, 2016, and notified the creditors that the "[l]ast day to oppose discharge or dischargeability" was July 5, 2016. A30.

On July 5, 2016, the bankruptcy trustee reported that the bankruptcy estate had no assets for distribution. Accordingly, the trustee "issued the standard notice" and explained that because this case was a "no-asset case," "creditors should not file proofs of claim unless and until it appeared that assets would be available for distribution." A3. As there were no assets for distribution, Kapitus did not file a proof of claim. And none of Delloso's creditors filed adversary complaints to oppose the discharge or the dischargeability of any debt. The

4

next day, the Bankruptcy Court granted Delloso's discharge. On August 5, 2016, the Bankruptcy Court closed the case.

More than five years later, on November 15, 2021, Kapitus moved to reopen the case. Kapitus alleged that in late 2020, as it was "attempting to enforce the Judgment against Greenville, [it] learned that Bari," the company Delloso identified as his employer in his chapter 7 petition, "was a concrete construction business associated with [Delloso]." A125. Kapitus explained that it learned that "Bari used the same addresses previously associated with Greenville, was controlled by [Delloso] and appeared to operate as a mere continuation of Greenville." Id. Kapitus also explained that it had brought suit in New York state court against Bari Concrete seeking satisfaction of the $776,600.25 judgment against Greenville Concrete and relief under various state laws for, among other things, "fraudulent conveyance," "conversion," and "unjust enrichment." A126.

Kapitus urged the Bankruptcy Court to reopen Delloso's chapter 7 case to permit it to file an adversary complaint challenging the dischargeability of its debt under 11 U.S.C. § 523(a)(2), (4) and (6). Kapitus further urged that Delloso's transfer of assets from Greenville Concrete to Bari Concrete just before Delloso's filing of his chapter 7 petition was a fraudulent conveyance that rendered the $776,600.25 judgment a non-dischargeable debt.

In the alternative, it posited that even if the Bankruptcy Court were to conclude that its debt was dischargeable, the discharge of the debt should be revoked under 11 U.S.C. § 727(d)(1). Under § 727, a bankruptcy court "shall revoke a discharge . . . if . . . such discharge was obtained through fraud

5

of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge[,]" 11 U.S.C. § 727(d)(1), and provided that the request for revocation is made "within one year after such discharge is granted," 11 U.S.C. § 727(e)(1).

Finally, Kapitus urged the Bankruptcy Court to exercise its discretion under 11 U.S.C. § 350 to reopen the case for cause, reappoint a trustee, and administer a previously undisclosed asset—Delloso's purported ownership interest in Bari Concrete.

After oral argument, the Bankruptcy Court declined to exercise its discretion and reopen the long-closed case for two of the reasons that had been cited by the Bankruptcy Court for the District of Delaware in In re: New Century TRS Holdings, Inc., No. 07-10416 (BLS), 2021 WL 4767924, at *6-7 (Bankr. D. Del. Oct. 12, 2021).[2]

---

[2] In New Century, the Delaware Bankruptcy Court listed several nonexclusive considerations in deciding whether to reopen a case:

    (i)    the length of time that the case was closed;

    (ii)    whether a non-bankruptcy forum, such as a state court, has the ability to determine the dispute to be posed by the debtor were the case reopened;

    (iii)    whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to

First, even if the Bankruptcy Court were to reopen the case, Kapitus could not obtain the relief it sought. Whether Kapitus filed a complaint to challenge the dischargeability of the $776,600.25 debt under § 523 or otherwise requested the revocation of Delloso's discharge under § 727(d)(1), its requests were "time-barred." A2. While Kapitus urged the court to apply equitable tolling to allow its claims for relief, the Bankruptcy Court concluded that applying that tolling to § 523 "would be inconsistent with the command of Rule 9006(b) stating that the time periods set out in Rule 4007(c) may be extended 'only to the extent and under the conditions stated in' the Rule." A14 (quoting Fed. R. Bankr. P. 9006(b)). Moreover, the claim under § 727(d) to revoke the discharge of the debt for fraud was foreclosed by Rule 9024. As the Court later noted, the upshot would be that "[p]ermitting equitable tolling would operate to extend the time limit under conditions *not* stated in the rule itself." A14. Such a result, the Court reasoned, would contradict the text of the timing rules that leave little room for flexibility and thus would not be permitted

---

determine the rights, post-bankruptcy, of the parties;

(iv) whether any parties would be prejudiced were the case reopened or not reopened;

(v) the extent of the benefit which the debtor seeks to achieve by reopening; and

(vi) whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened.

2021 WL 4767924 at, *6-7 (citing In re Rashid, No. Civ. A. 04-1585, 2004 WL 2861872, at *3 (E.D. Pa. Dec. 13, 2004)).

7

under the Supreme Court's decision in <u>Nutraceutical Corp. v. Lambert</u>, 139 S. Ct. 710 (2019).

Second, the Court reasoned that there was "no need to reopen a long-closed bankruptcy case . . . because Kapitus may obtain relief in the New York Action." A23. The availability of an alternative forum in which to seek relief, thus, "counsel[ed] strongly against reopening [the] bankruptcy case." A23.

The Bankruptcy Court denied the motion to reopen. The parties then requested certification for immediate appeal to this Court because the appeal had the potential to "advance the progress of the case or proceeding" materially. A320. We granted the request.

## II.

The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157 and 1334. As we granted the parties' request for certification of immediate appeal, we have jurisdiction under 28 U.S.C. § 158(d)(2).

## III.

## A.

Kapitus styled its motion in the Bankruptcy Court as a "Creditor Motion for Order to (I) Reopen Debtor's Case Pursuant to Bankruptcy Code § 350(b) and Rule 5010 of the Federal Rules of Bankruptcy Procedure to Allow Creditor to File Complaint Seeking to Revoke the Debtor's Discharge as to Creditor's Claim Pursuant to Bankruptcy Code [§] 523(a) or

8

Alternatively as to All Creditors Pursuant to Bankruptcy Code § 727(d)(1); (II) Alternatively, (A) Reopen Debtor's Case Pursuant to Bankruptcy Code § 350(b) to Administer a Previously Undisclosed Asset and (B) Direct the United States Trustee to Appoint a Bankruptcy Trustee; and (III) Grant Such Other Relief as the Court May Deem Just and Proper." A120.

As noted above, in determining whether to reopen the case, the Bankruptcy Court considered the factors outlined in New Century and relied on two of them when it decided to deny the motion. First, the Court looked to the sixth factor, which examines "whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened." 2021 WL 4767924, at *7. It found that factor counseled against reopening. Kapitus does not challenge the propriety of considering this factor; instead, Kapitus urges that reopening is warranted to permit it to pursue potentially viable theories of relief. Second, the Court relied on the second New Century factor, which asks "whether a non-bankruptcy forum, such as a state court, has the ability to determine the dispute to be posed by the debtor were the case reopened." Id. at *6. Kapitus contends that the existence of other legal avenues for relief should not prevent the reopening of the case to deal with a newly discovered asset.

Kapitus's primary argument on appeal is that the Bankruptcy Rules that govern the time for pursuing its claims—specifically, Rules 4007(c) and 9006(b)—are subject to equitable doctrines, like equitable tolling, and the Court's powers under Bankruptcy Code § 105(a), such that it should be permitted to challenge Delloso's discharge if the case were reopened. We begin with the Bankruptcy Code and Rules.

9

The Bankruptcy Code provisions on which Kapitus relies—namely, §§ 350(b), 523(a), and 727(d)(1)—contain grants of power permitting bankruptcy courts to reopen a case, provide for an exception to discharge, and revoke a discharge, respectively. The timing of a creditor's request for the Court to exercise those powers is controlled by the Bankruptcy Rules. Rule 4007(c) provides:

> [A] complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a). . . . The motion shall be filed before the time has expired.

Fed. R. Bankr. P. 4007(c). And Rule 9006(b), which governs general enlargements of time limits set forth in the Bankruptcy Rules, provides:

> The court may enlarge the time for taking action under . . . 4007(c) . . . only to the extent and under the conditions stated in those rules.

Fed. R. Bankr. P. 9006(b)(3) (emphasis added). Rule 5010 merely states that a case may be reopened upon the motion of the debtor or other party in interest. Thus, Kapitus's motion is clearly time-barred under the Rules, yet he contends that equitable principles should apply to allow his complaint to proceed.

B.

Kapitus urges that the Bankruptcy Court erred in relying on the Supreme Court's decision in Nutraceutical to conclude

10

that it lacked the authority to toll the deadline for Kapitus to challenge the dischargeability of its debt under the Bankruptcy Rules. We disagree. The Bankruptcy Court was correct that the principles articulated in Nutraceutical guide the analysis here such that the plain text of Rules 4007(c), 9006(b), and 9024 control.

In Nutraceutical, the Supreme Court clarified that even if a timing rule is not jurisdictional in character, where the text of "the pertinent rule or rules invoked show a clear intent to preclude tolling, courts are without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving." 139 S. Ct. at 714 (citing Carlisle v. United States, 517 U.S. 416, 421 (1996)). There, Troy Lambert filed a putative class action against Nutraceutical Corporation for alleged violations of a state consumer protection law. Id. at 713. Later, the district court issued an order denying class certification, which started Lambert's fourteen-day window to appeal the decertification order. Id. But rather than file an immediate appeal as required by Federal Rule of Civil Procedure 23, Lambert informed the district court that he would, instead, move for reconsideration of the order. Id. The district court set a deadline for the motion for reconsideration, which Lambert met. Id. Unpersuaded by Lambert's filing, the district court denied the motion. Id. Lambert then appealed the order denying his motion for reconsideration and the underlying order denying class certification. Id.

On appeal, Nutraceutical argued that Lambert's appeal was untimely under Rule 23, which requires a party to appeal an order decertifying a class or denying class certification "within 14 days after the order is entered," Fed. R. Civ. P.

11

23(f), not, as was the case, within 14 days after a motion for reconsideration is denied. Id. Yet even after conceding Lambert's appeal was untimely, the Ninth Circuit still excused that untimeliness by tolling the Rule 23(f) deadline. Id. It "reasoned that Rule 23(f)'s time limit is 'non-jurisdictional, and that equitable remedies softening the deadline are therefore generally available." Id. (quoting Lambert v. Nutraceutical, 870 F.3d 1170, 1176 (9th Cir. 2017)). While the Supreme Court agreed that Rule 23(f) is "nonjurisdictional," it rejected the Ninth Circuit's conclusion that as a "nonjurisdictional" rule it "necessarily, [is] subject to equitable tolling." Id. at 714.

The Supreme Court began its analysis by recognizing that "[b]ecause Rule 23(f)'s time limitation is found in a procedural rule, not a statute, it is properly classified as a nonjursidictional claim-processing rule." Id. Yet "[t]he mere fact that a time limit lacks jurisdictional force . . . does not render it malleable in every respect." Id. "Whether a rule precludes equitable tolling turns not on its jurisdictional character but rather on whether the text of the rule leaves room for such flexibility." Id. Thus, "[w]here the pertinent rule or rules invoked show a clear intent to preclude tolling, courts are without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving." Id. (citing Carlisle, 517 U.S. at 421). The clear intent to preclude tolling turns on the text of the rule because "[c]ourts may not disregard a properly raised procedural rule's plain import any more than they may a statute's." Id. (citing Bank of Nova Scotia v. United States, 487 U.S. 250, 255 (1988)).

Turning to the text of Rule 23(f), the Supreme Court had no difficulty discerning the rule's clear intent that the deadline

set forth in the rule could not be subject to tolling. Id. at 715. The Supreme Court noted that under the rule, any appeal "must be filed within the time specified," and while "the simple fact that a deadline is phrased in an unqualified manner does not necessarily establish that tolling is unavailable[,] . . . [h]ere, however, the Federal Rules of Appellate Procedure single out Civil Rule 23(f) for inflexible treatment." Id. (internal citations omitted) (emphasis added). Specifically, Federal Rule of Appellate Procedure 26(b) contains an "express carveout: A court of appeals 'may not extend the time to file . . . a petition for permission to appeal.'" Id. (quoting Fed. R. App. P. 26(b)(1)). The Court observed that this demonstrated "a clear intent to compel rigorous enforcement of Rule 23(f)'s deadline, even where good cause for equitable tolling might otherwise exist." Id.

In further support of the conclusion that Rule 23(f)'s deadline could not be tolled, the Supreme Court relied on its decision in Carlisle, 517 U.S. 416. There, the Supreme Court observed that where Federal Rule of Appellate Procedure 45(b) "made clear that 'the court may not extend the time for taking any action' under [Federal Rule of Criminal Procedure 29] 'except to the extent and under the conditions' stated therein," "the text's purpose to foreclose acceptance of untimely motions" was "plain and unambiguous." Nutraceutical, 139 S. Ct. at 715 (quoting Carlisle, 517 U.S. at 421). Thus, given Rule 26(b)'s clarity, the Supreme Court readily concluded that equitable tolling was unavailable despite the rule's nonjurisdictional character.

Although the Supreme Court in Nutraceutical construed different procedural rules, bankruptcy courts have properly heeded the Supreme Court's instructions in that case to

13

determine whether the timing rules governing the submission of complaints challenging the dischargeability of debt are subject to tolling. Indeed, the Bankruptcy Court here joined two others in our circuit to conclude that Rule 4007(c)'s deadline cannot be tolled. In re Zakarin, 602 B.R. 275, 283 (Bankr. D.N.J. May 9, 2019) (concluding "that Rule 4007 does not permit equitable tolling"); In re Zaidi, Case No. 19-13997, 2020 WL 1580258, at *2 (Bankr. D.N.J. March 30, 2020) ("The text of both Rule 4004 and 4007 simply do not 'leave room for [the] flexibility" of equitable tolling.); see also In re Wilding, 620 B.R. 843, 867 (Bankr. D.N.J. 2020) (citing Zakarin for the proposition that it is doubtful that equitable tolling is available under Rule 4007(c)).

In Zakarin, counsel for a creditor contacted the bankruptcy court on the last day of the 60-day period in which to file a complaint challenging the dischargeability of a debt, explaining that he had prepared a complaint, but technical problems stopped him from docketing it. 602 B.R. at 277. Although counsel eventually docketed the complaint three days later, he was not licensed to practice in the district and, therefore, his filing was considered a legal nullity. Id. A cognizable complaint was not submitted until more than two months after the filing deadline had passed. Id. at 286. To correct this error, the creditor moved to extend the time to file its complaint under Rule 4007(c) and urged the bankruptcy court to apply equitable tolling to deem the admittedly late complaint timely. Id. at 279.

The bankruptcy court concluded, however, that Rule 4007(c) "does not permit equitable tolling." Id. at 283. In reaching this conclusion, the court noted that whether tolling was available under Rule 4007(c) had divided the courts and

14

that "[t]here is no binding case law in the Third Circuit." Id. at 281. The bankruptcy court first reviewed the Supreme Court's decision in Kontrick v. Ryan, 540 U.S. 443 (2004), as the holding in that case appeared to have engendered the disparate views of the lower courts regarding Rule 4007(c). Zacharin, 602 B.R. at 280-81. Kontrick appeared to have provided strong persuasive authority to support the proposition that Rule 4007(c), like Rule 4004, is nonjurisdictional in character. But the Supreme Court itself explained that it would not resolve the question of whether Rule 4007(c) may be equitably tolled. Kontrick, 540 U.S. at 454 ("Whether [Rules 4004 and 4007], despite their strict limitations, could be softened on equitable grounds is . . . a question we do not reach."). Without guidance on this latter question, the lower courts arrived at varying conclusions. Compare, e.g., Anwar v. Johnson, 720 F.3d 1183 (9th Cir. 2013) (concluding that despite the nonjurisdictional nature of Rules 4007(c) and 9006(b), the text of the rules does not allow tolling), with In re Rychalsky, 318 B.R. 61 (Bankr. E.D. Pa. 2004) (concluding that equitable tolling was available).

The bankruptcy court in Zakarin concluded that Nutraceutical supplied the analytical framework to answer whether Rule 4007(c), despite being a nonjurisdictional claim-processing rule, still expressed a clear intent to preclude tolling. The bankruptcy court applied the Nutraceutical framework to Rule 4007(c) and concluded that "[j]ust as with Appellate Rule 23(f), the Bankruptcy Rules 'express a clear intent to compel rigorous enforcement' of Rule 4007(c)'s deadline 'even where good cause for equitable tolling might otherwise exist.'" Zakarin, 602 B.R. at 283 (quoting Nutraceutical, 139 S. Ct. at 715). And while the bankruptcy court "agree[d] that '[d]eadlines may lead to unwelcome

15

results, . . . they prompt parties to act and they produce finality.'" Id. (quoting Taylor v. Freeland & Kronz, 503 U.S. 638, 644 (1992)).

The Bankruptcy Court here adopted the reasoning of Zakarin. Similarly, the bankruptcy court in Zaidi voiced its "complete agreement with the analysis in Zakarin," 2020 WL 1580258, at *2. We agree with the analysis of the bankruptcy courts in Zakarin, Zaidi, and this case.

C.

We first conclude that because the "time limitation" here is found "in . . . procedural rule[s], not a statute, it is properly classified as a nonjurisdictional claim-processing rule." Nutraceutical, 139 S. Ct. at 714. The time limitation for a complaint challenging the dischargeability of a debt under § 523 is found in Bankruptcy Rules 4007(c) and 9006(b). As the Supreme Court instructed, however, "[t]he mere fact that a time limit lacks jurisdictional force . . . does not render it malleable in every respect." Id. Thus, we recognize, as the Bankruptcy Court did, that to decide whether equitable tolling is available under Rule 4007(c) and Rule 9006(b), we must answer "whether 'the text of the rule[s] leaves room for such flexibility.'" A15 (quoting Nutraceutical, 139 S. Ct. at 714). If the "rule[s] show[] 'a clear intent to preclude tolling, courts are without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving.'" Id.

We turn next to the text of Rule 4007(c). See id. at 714 (emphasizing that "[c]ourts may not disregard a properly raised procedural rule's plain import any more than they may a

16

statute's"). As noted above, the rule provides that "a complaint to determine the dischargeability of a debt under § 523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a) . . . ." Fed. R. Bankr. P. 4007(c) (emphasis added). Although the rule employs the words "shall be filed," which suggests, on its face, that the rule is to be strictly enforced, the Supreme Court has cautioned that "the simple fact that a deadline is phrased in an unqualified manner does not necessarily establish that tolling is unavailable." Nutraceutical, 139 S. Ct. at 715. Yet the text of Rule 4007(c) reveals more.

The rule itself provides an exception to its blanket 60-day deadline for filing a complaint in that "[o]n motion of a party . . . after hearing on notice, the court may for cause extend the time under this subdivision. The motion shall be filed before the time has expired." Fed. R. Bankr. P. 4007(c) (emphasis added). This expressly carves out a single and narrowly circumscribed exception to the general rule—the court may exercise its discretion to enlarge the time to file a complaint challenging the dischargeability of a debt, but only upon a motion filed before the time for filing the complaint has expired. Id. Nothing in the rule suggests that a court can sua sponte extend the time for filing a complaint. And, indeed, a court acting on a motion to extend this time limit is directed specifically to provide notice to the parties regarding the motion and entertain a hearing. Id. The existence of a specific exception to the general rule that delineates the procedure a court must take to grant an exception appears to evince a clear intent that other exceptions to the time limit requirement, including equitable tolling, do not apply.

17

But there is more.  Rule 9006 singles out Rule 4007(c) for "inflexible treatment," <u>Nutraceutical</u>, 139 S. Ct. at 715, buttressing the conclusion that only the exceptions outlined in the rule itself are available:  the court may enlarge the time for taking action under § 4007(c) <u>only</u> to the extent and under the conditions stated in the rule.  Much like how the Supreme Court in <u>Nutraceutical</u> concluded that by singling out Rule 23(f) for inflexible treatment the Federal Rules of Appellate Procedure showed an intent to make tolling unavailable, we view Rule 9006(b)'s singling out of Rule 4007(c) as evidencing an intent to preclude equitable tolling.  Though the Court in <u>Nutraceutical</u> may have focused on the phrase "may not extend," we view the phrase "only to the extent and under the conditions," Fed. R. Bankr. P. 9006(b)(3), to reflect the same inflexibility.  Cf. <u>Konrick</u>, 540 U.S. at 446 n.10 ("Like Federal Rule of Criminal Procedure 45(b) and Federal Rule of Appellate Procedure 26(b), Bankruptcy Rule 9006(b) is modeled on Federal Rule of Civil Procedure 6(b).").

Thus, while Rule 9006(b) generally grants the bankruptcy courts power to enlarge time limits imposed under the bankruptcy rules, Rule 9006(b)(3) expressly limits the power to enlarge the time limit for filing a complaint under § 523 "to the extent and under the conditions stated in [Rule 4007(c)]."  Fed. R. Bankr. P. 9006(b)(3).  Taken together with the text of Rule 4007(c), we conclude that this expresses a clear intent to preclude exceptions to the time limit for challenging the dischargeability of a debt, including those based on equitable tolling.[3]

---

[3] Although Kapitus also sought relief under § 727 before the Bankruptcy Court, we note that Kapitus does not challenge that aspect of the Bankruptcy Court's opinion in which it rejected

18

D.

Kapitus, however, urges that Nutraceutical should not guide the analysis here. It cites various out-of-circuit bankruptcy court cases, which purportedly show that Nutraceutical is inapplicable. In citing these cases, not only does Kapitus ignore the weight of the bankruptcy cases from within this circuit that have relied on the Nutraceutical framework to resolve the issue presented in this case, see Section III.B, supra, but it also ignores that the cases it relies on draw upon cases that either preceded Nutraceutical or are founded on the mistaken view, based on Kontrick, 540 U.S. 443, that the nonjurisdictional character of the bankruptcy rules ends the inquiry. See In re Klaynberg, Case No. 22-10165 (MG), 2022 WL 4350985, at *4 (Bankr. S.D.N.Y. Sept. 19, 2022) (concluding that because Rule 9006(b)(3) is nonjurisdictional it is subject to tolling); In re Heng Li Zhu, Case No. 19-11870-JLG, 2022 WL 3364579, at *9 (Bankr. S.D.N.Y. Aug. 12, 2022) (following the same reasoning to reach the same conclusion regarding Rules 4004(a) and 4007(c)); In re Conte, Case No. 21-13189, 2022 WL 1216280, at *2 (Bankr. N.D. Oh. Apr. 25, 2022) (same); Matter of Podwinski, Case No. BK19-41937-TLS, 2021 WL 371769 (Bankr. D. Neb. Feb. 2, 2021) (same). But the Supreme Court

---

Kaptitus's complaint under § 727(d)(1) as untimely. Nevertheless, we note that while one might anticipate some room for equitable considerations given the subject of § 727(d), namely undiscovered fraud, Rule 9024's strict statement that the request to revoke the discharge "may be filed only" within the time allowed under § 727(e) appears to express an intent to foreclose such flexibility.

has, as we have explained, held that while there exists a presumption that tolling is available to extend the timeframes established under such nonjurisdictional rules, the presumption is rebuttable. Boechler, P.C. v. Comm'r of Internal Revenue, 142 S. Ct. 1493, 1500 (2022). Indeed, the core teaching of Nutraceutical is that the text of a rule is central to whether the rule "leaves room for such flexibility," 139 S. Ct. at 714, not merely the rule's character as jurisdictional or nonjurisdictional.

Moreover, Kapitus also urges that Nutraceutical does not apply because it did not involve "deadlines set forth in [the] Bankruptcy Rules," Appellant's Br. 26. But we read its analysis as applying to rules more generally. Kapitus's reliance on Boechler, 142 S. Ct. 1493, is somewhat disingenuous as that decision did not involve "deadlines set forth in [the] Bankruptcy Rules," Appellant's Br. 26.

In Boechler, the Supreme Court considered whether under 26 U.S.C. § 6330(d)(1), the 30-day deadline to petition the Tax Court for review of an adverse decision after a "collection due process hearing" could be equitably tolled for a taxpayer who missed the deadline by one day. Id. at 1496-97. Although the IRS Commissioner concluded that the time limit was not subject to equitable tolling, the Supreme Court disagreed. Id.

The Supreme Court first concluded that § 6330(d)(1)'s time limit was nonjurisdictional in nature and, therefore, presumptively subject to tolling. Id. at 1500. Next, the Court concluded that nothing in the text or structure of § 6330(d)(1) rebutted this presumption. Id. "Section 6330(d)(1) does not expressly prohibit equitable tolling, and its short, 30-day time limit is directed at the taxpayer, not the court." Id. Moreover,

20

"[t]he deadline also appears in a section of the Tax Code that is 'unusually protective' of taxpayers and a scheme in which 'laymen, unassisted by trained lawyer,' often 'initiate the process.'" Id. (quoting Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 160 (2013)).

By contrast, in this case, Rules 4007(c) and 9006(b) are explicit that any enlargement of time to file a complaint under § 523 may be granted by a court only upon motion by as set forth under Rule 4007(c). And, unlike § 6330(d)(1) that targets only a taxpayer's conduct, Rule 4007(c) imposes on the court a notice and hearing requirement before it may grant any extension of time. Thus, Rule 4007(c), by its terms, is intended to affect the court's inherent power to manage its proceedings. Finally, unlike § 6330(d)(1), which appears in a Tax Code section that is "unusually protective" of unsophisticated and unrepresented taxpayers, Rule 4007(c) is targeted at creditors who are often sophisticated and represented by counsel. See, e.g., A64-80 (listing Delloso's creditors including institutions such as Ally Financial, Capital One Bank, Citibank, HSBC, Synchrony Bank, and TD Bank). Boechler is readily distinguishable from this case and does little to advance Kapitus's cause.

Thwarted by the Rules and Supreme Court precedent, Kapitus urges that the Bankruptcy Rules conflict with § 105(a) of the Bankruptcy Code and the former must yield to the latter. Under § 105, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Kapitus reasons that "[a]s a statutory provision, Bankruptcy Section 105(a) trumps Bankruptcy Rules 4007(c) and 9006(b) to the extent those Rules abridge the substantive rights set forth in

21

Bankruptcy Section 105(a)." Appellant's Br. 30. Kapitus also reasons that the Bankruptcy Court erred in concluding it could not exercise its inherent powers to toll the time limit imposed by Rules 4007(c) and 9006(b). As it did below, Kapitus relies heavily on the Supreme Court's decision in Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365 (2007) for support. But as the Bankruptcy Court adeptly explained, Kapitus reads Marrama too broadly.

Kapitus cites Marrama for the sweeping proposition that a bankruptcy court's inherent powers to address fraud extend to tolling the limitations period under Rules 4007(c) and 9006(b). The Bankruptcy Court, however, explained that "[t]he basic holding of Marrama was only that a debtor whose bad faith conduct rendered him ineligible to proceed in a chapter 13 case could be denied the right, under section 706(a), to convert from chapter 7 to chapter 13." A19. The Bankruptcy Court noted that the Supreme Court's opinion in Law v. Siegel, 571 U.S. 415 (2014), made clear that Marrama does not support the broad proposition that courts have unfettered authority carry out the provisions of the Bankruptcy Code. There, the Supreme Court cautioned that "in exercising [its] statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions." Id. at 421. It added that "[a]t most, Marrama's dictum [regarding the courts' power under § 105] suggests that in some circumstances a bankruptcy court may be authorized to dispense with futile procedural niceties in order to reach more expeditiously an end result required by the Code." Id. at 426; see also In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) ("[T]he 'equitable powers emanating from § 105(a) . . . are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules.'") (quoting In re Barbieri, 199 F.3d 616, 620-21 (2d Cir. 1999)); Anwar, 720 F.3d at 1187

22

(concluding that the equitable powers of the courts are subject to the "confines . . . [and] deadlines set by the Federal Rules of Bankruptcy Procedure") (citing Zidell, Inc. v. Forsch, 920 F.2d 1428, 1432 (9th Cir. 1990)).

While, as Kapitus urges, Rules 4007(c) and 9006(b) are rules and not provisions of the Bankruptcy Code, and any conflict between the rules and the Code must be resolved in favor of the Code, this does little to advance its cause because here there is no conflict. As the Bankruptcy Court reasoned: Nothing in Rule 9006(b) prevents a bankruptcy court from taking appropriate [discretionary] action to address an abuse of process. The rule merely imposes a time limit on a creditor's ability to point to a debtor's (pre-bankruptcy) fraud as a basis for contending that a particular debt is nondischargeable. That poses no conflict with the grant of authority provided in § 105. A21. Nothing in our decision here affects the bankruptcy courts' power under § 105 to carry out the provisions of the Bankruptcy Code. Instead, we hold only that the Bankruptcy Court was correct in concluding that Rules 4007(c) and 9006(b), read together, express an intent that tolling is unavailable. A bankruptcy court faced with fraud may still engage in any appropriate action to root out the fraud and prevent an abuse of process in a manner consistent with the Bankruptcy Code and Rules.

E.

Kapitus also urges that the Bankruptcy Court should not have based its decision denying the request to reopen the case on the existence of its suit against Bari and the New York courts. Instead, it urges that the Court abused its discretion in failing to reopen the case to administer Delloso's previously

23

undisclosed interest in Bari Concrete. Kapitus argues that the Bankruptcy Court should have reopened the case not just for its benefit, but for the benefit of all creditors because if Kapitus fails to recover in New York state court, Delloso will have successfully defrauded the bankruptcy system. But the Bankruptcy Court weighed the prospect of "reopening the bankruptcy case to administer the alleged newly discovered asset" against the cost of opening the long-closed case and "appoint[ing] a [new] trustee[,]" concluding that if the asset was valuable, New York state creditor remedies would be adequate. A24. We do not think that its balancing of these factors constituted an abuse of its discretion.[4]

## IV.

For these reasons, we will affirm the Bankruptcy Court's order denying Kapitus's motion to reopen.

---

[4] Moreover, Kapitus does not address how such a theory—to reopen whenever there is a newly discovered asset—can somehow escape the prevailing time bars.